UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLY POPE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant.
_______________________________/

Case No. 2:18-cv-11250
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) and REMAND THIS MATTER TO THE COMMISSIONER**

**I. RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 11), **DENY** Defendant's motion for summary judgment (DE 13), and **REMAND** this matter to the Commissioner for proceedings consistent with this report.

## II. REPORT

This case is about Plaintiff's exertional capabilities, specifically whether Plaintiff is capable of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff, Shelly Pope, brings this action under 42 U.S.C §§ 405(g),

1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 11), the Commissioner's cross-motion for summary judgment (DE 13), Plaintiff's reply (DE 14), and the administrative record (DE 9).

**A. Background and Administrative History**

Plaintiff alleges her disability began on June 1, 2011, at the age of 44. (R. at 132, 601.) In her disability reports, she lists several conditions (fibromyalgia (FM), extreme fatigue, migraines and tension headaches, bilateral Achilles tendon tears, Haglund's deformity in feet, osteoarthritis in feet, biomechanical faulting in feet, and heart palpitations) as limiting her ability to work. (R. at 646, 156.)

On January 11, 2013, Plaintiff filed an application for DI benefits, which ultimately resulted in ALJ Earl Ashford's May 21, 2014 decision. (R. at 132-138, 22-36.) Plaintiff filed her prior appeal on August 21, 2015, which resulted in a remand for the purposes of reassessing her physical residual functional capacity. *Pope v. Comm'r of Soc. Sec.*, No. 15-12977, 2016 WL 8115399, at *1 (E.D. Mich.

May 19, 2016) (Morris, M.J.), *report and recommendation adopted*, 2016 WL 4055035 (E.D. Mich. July 29, 2016) (Hood, C.J.). (*See also* R. at 402-449.)[1]

On August 26, 2015, just five days after filing her prior appeal in this Court, Plaintiff filed a subsequent application for DI benefits. (R. at 601-602.) Her application was denied on October 28, 2015. (R. at 391-401, 478-485.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 486.) On March 16, 2017, ALJ Ashford held a hearing, at which Plaintiff and a vocational expert (VE), Joseph Thompson, testified. (R. at 360-384.) On May 31, 2017, ALJ Ashford issued an opinion, regarding the issue on remand and Plaintiff's subsequent application and which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 340-359.)

Plaintiff submitted a request for review of the hearing decision/order. (R. at 597-599.) However, on March 16, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 331-336.) Thus, ALJ Ashford's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 20, 2018.

**B. Plaintiff's Medical History**

---

[1] *See also Pope v. Comm'r of Soc. Sec.*, No. 15-12977, 2017 WL 2374827, at *2 (E.D. Mich. Mar. 3, 2017) (on motion for EAJA attorney fees, "[t]he Commissioner Was Not Substantially Justified"), *report and recommendation adopted*, No. 15-12977, 2017 WL 2351737 (E.D. Mich. May 31, 2017).

The administrative record contains approximately 318 pages of medical records, which were available to the ALJ at the time of his May 31, 2017 decision. (R. at 358-359, 217-330, 706-909 [Exhibits 1F-18F].) These materials will be discussed in detail, as necessary, below.

**C. The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 1, 2011 through her date last insured (DLI) of December 31, 2016. (R. at 345.) At **Step 2**, the ALJ found that, through the DLI, Plaintiff had the following severe impairments: FM/myalgia; migraines/headaches; near syncope; and several foot disorders. (*Id*. at 345-346.) At **Step 3**, the ALJ found that, through the DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and, *inter alia*, the ALJ noted his consideration of SSR 12-2p ("Evaluation of Fibromyalgia"). (*Id*. at 346.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that, through the DLI, Plaintiff had the RFC:

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

> . . . to perform light work [*i.e.*, *exertional limitations*] . . . except *postural limitations* of no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; *manipulative limitation* of frequent use of the bilateral upper extremities for reaching, handling, and fingering; occasional use of the bilateral lower extremities for operation of foot controls. *Environmental limitation* to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights. Additional *environmental limitation* to avoid concentrated exposure to irritants such as fumes, odors, dust, and gases, extreme cold, extreme heat, humidity, wetness, and vibrations.

(*Id*. at 346-350 (emphases added).) At **Step 4**, the ALJ determined that, through the DLI, Plaintiff was capable of performing past relevant work as an inspector/packer. (*Id*. at 350-351.) In the alternative, the ALJ made a **Step 5** finding that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could also have performed, such as a folder, a production inspector, and an assembler. (*Id*. at 351.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from June 1, 2011, the alleged onset date, through December 31, 2016, the DLI. (*Id*. at 351-352.)

**D. Standard of Review**

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E. Analysis**

With seeming reference to 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 201.09, Plaintiff argues that, "[h]ad the ALJ limited Plaintiff to sedentary work *and* applied the borderline age rule, then a finding of disability would have resulted . . . ." (DE 11 at 12 (emphasis added).)

**1. Whether the ALJ should have applied the borderline age rule?**

Plaintiff was born on February 4, 1967. (R. at 132.) Thus, on her December 31, 2016 DLI, she was 49 years old, and the ALJ accordingly classified her as a younger person. (R. at 350; 20 C.F.R. §§ 404.1563(c).) However, she was only 35

days shy of her 50th birthday, at which point she would have been considered a "[p]erson closely approaching advanced age." 20 C.F.R. § 404.1563(d).[3]

The Social Security Administration (SSA) regulations provide guidance on application of the age categories:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Having failed to address this issue, the Commissioner must agree with Plaintiff that she "meets the criteria for a borderline age situation before her Date Last Insured." (DE 14 at 5; *see also* DE 11 at 12.)

**2. Whether there is substantial evidence that Plaintiff can perform the exertional, specifically sitting, limitations of light work?**

The ALJ concluded that Plaintiff was capable of performing work at the light exertional level. (R. at 346.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting

[3] At the March 16, 2017 hearing, counsel noted that Dr. Lund's CE exam "would preclude even sedentary employment over her 50th birthday." (R. at 383-384.)

most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added).

Plaintiff's contention that the ALJ erred in finding her capable of the exertional limitations of light work is based on the ALJ's treatment of opinions from her treating rheumatologist (Angela Malani, M.D.) and two consultative examiners (Alexander Lund, D.O. and R. Scott Lazzara, M.D.). (DE 11 at 13-20, DE 14 at 4-9.) The Commissioner contends that substantial evidence supports the ALJ's assessments of these opinions. (DE 13 at 8-26.)

As discussed below, Plaintiff has successfully argued that substantial evidence does not support, or it is at least not clear where the ALJ derived support for, the conclusion that she is capable of the sitting limitations of light work.

**a. The opinion evidence on sitting**

On April 19, 2014, Dr. Lund conducted a consultative examination and issued a report and an MSS of Plaintiff's physical ability to do work-related activities. (R. at 304-316.) In his report, Dr. Lund noted: "The patient had no difficulty getting on and off the exam table and heel and toe walking, and moderate difficulty with squatting or hopping. Gait is normal. The patient does not use an assistive device for ambulation." (R. at 305.) The extremities and musculoskeletal exam revealed:

> There are no obvious bony deformities. Peripheral pulses are easily palpated and symmetrical. There is no edema. There are

> paravertebral muscle spasms noted. The patient did have tenderness to palpation on the anterior shoulders, lateral thighs, cervical spine, lumbar spine and bilateral ankles. There was a bulge in the bilateral lower Achilles tendons that was tender to touch. Range of motion of all joints checked is full. Straight leg raise is negative bilaterally. There is no erythema, or effusion of any joint. Grip and pincher strength is normal as tested grossly. The hands have full dexterity.

(R. at 306.) Within the MSS, Dr. Lund opined that, due to pain associated with FM, Plaintiff could frequently lift and carry up to 10 pounds and occasionally lift and carry 11-20 pounds, but she could not lift or carry 21 or more pounds. (R. at 309.) Dr. Lund further opined that, <u>at one time without interruption</u>, Plaintiff could <u>sit for 30 minutes</u>, stand for 10 minutes, and walk for 30 minutes, but, <u>in total in an 8 hour work day</u>, Plaintiff could <u>sit for 4 hours</u>, stand for 1 hour, and walk for 3 hours. (R. at 310.)

In addition, Dr. Malani opined that Plaintiff could <u>sit at one time for 15 minutes</u> before needing to get up, etc. and <u>sit less than 2 hours total</u> in an 8-hour working day. (R. at 300, 328.) On the other hand, consultative examiner Dr. Lazzara did not assess sitting limitations (R. at 745), and state agency consultant Glen Douglass, M.D., opined that Plaintiff could <u>sit for a total of "[a]bout 6 hours</u> in an 8-hour workday" (R. at 396 (emphasis added)).

**b. The ALJ's May 31, 2017 treatment of Dr. Lund's opinion**

ALJ Ashford reviewed this exhibit in his May 21, 2014 decision. (R. at 30.) ALJ Ashford again reviewed this exhibit in his May 31, 2017 decision, making

specific reference to Dr. Lund's notes from the general, extremities and musculoskeletal, and neurological examinations. (R. at 348, 305-307.) ALJ Ashford also referred to Dr. Lund's conclusion that Plaintiff "was able to complete all tasks asked of her during her examination today with none to moderate difficulty mainly due to pain with squatting and hopping. Her digital dexterity was intact bilaterally. She did not require the use of an assistive device . . . ." (R. at 349, 307.) After reviewing Dr. Lund's MSS (R. at 309-313), the ALJ stated:

> While the record supports that the claimant was able to perform a range of light work activity, there is no indication of record, aside from the claimant's subjective complaints, for such stringent limitations in sitting at one time [*i.e.*, 30 minutes (R. at 310)], standing, or walking, nor is there support for preclusion of the postural activities of stooping, kneeling, crouching, or crawling. *Strength, gait, muscle tone, sensation, and range of motion were consistently normal throughout the period at issue. There was no crepitance or joint laxity noted.* While the record supports some limitations based upon the claimant's fibromyalgia and bilateral ankle problems, these specific limitations – those limiting standing, walking, sitting at one time, stooping, kneeling, crouching, or crawling – are given little weight, as they are generally *inconsistent with the record as a whole*. . . . Overall, Dr. Lund's opinions are given partial weight, with great weight afforded to his opinion that the claimant was capable of a light range of exertion, sitting four hours in an eight-hour workday, and exposure to the above-listed environmental factors, and lesser weight afforded to the remainder of his assessments.

(R. at 349 (emphases added).)

Having recognized Dr. Lund as a consultative examiner, it is clear that the ALJ took into consideration several of the 20 C.F.R. §§ 404.1527(c), 416.927(c)

factors, such as the examining and treatment relationships (or lack thereof), supportability and consistency, when discounting Dr. Lund's opinion. Plaintiff's argument that the ALJ misinterpreted Dr. Lund's exertional limitations has three bases, namely subjective complaints, objective findings, and consistency with the record as a whole. (DE 11 at 13-16.) The Court need only address two.

**i. Objective findings**

First, Plaintiff questions the relevance of the objective findings the ALJ used to discount Dr. Lund's opinion. Plaintiff claims that, even if "[s]trength, gait, muscle tone, sensation, and range of motion were consistently normal throughout the period at issue[,]" and no "crepitance" or joint laxity was noted (R. at 349), "none of these are meaningful diagnostic criteria for fibromyalgia[.]" (DE 11 at 14, DE 14 at 7.)[4] Instead, Plaintiff points to Dr. Lund's note that she "did have tenderness to palpation on the anterior shoulders, lateral thighs, cervical spine, lumbar spine and bilateral ankles[,]" (R. at 306), which she contends are "consistent with a diagnosis of fibromyalgia." (DE 11 at 14.)

The Commissioner correctly points out that an ALJ "may consider objective medical testing to determine the level of functional impairment." (DE 13 at 16.)

---

[4] The Court suspects this is a typographical error for *crepitation*, which means "[n]oise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions." Stedman's Medical Dictionary 211900 (Nov. 2014).

*See Hayward v. Comm'r of Soc. Sec.*, No. CV 14-14613, 2015 WL 7749173, at *6 (E.D. Mich. Sept. 21, 2015) (Grand, M.J.) (where Plaintiff had FM, “it was not at all improper for the ALJ to consider Hayward's normal gait, muscle strength, and tone in assessing her subjective complaints and, ultimately, in formulating her RFC.”), *report and recommendation adopted*, No. CV 14-14613, 2015 WL 7733448 (E.D. Mich. Nov. 30, 2015) (Battani, J.). And, in addition to the ALJ’s consideration of Drs. Lund, Malani, and Lazzara’s opinions, the Commissioner notes the ALJ’s consideration of normal range of motion, no tenderness, and no abnormal neurological findings in June 4, 2013 notes from Dr. Cordoba-Naguit. (R. at 348, 293; DE 13 at 17.)[5]

However, the Court agrees that the ALJ “cannot discredit [Dr. Lund’s] opinion by pointing to *irrelevant* other findings.” (DE 11 at 14 (emphasis added).) At least to the extent the ALJ relied upon absence of crepitation, Plaintiff convincingly argues that, while it “would be used to contradict restrictions from arthritis or other joint dysfunction, it is not *relevant* to fibromyalgia.” (DE 14 at 7 (emphasis added).)

**ii. Consistency with the record as a whole**

---

[5] The ALJ also acknowledged Dr. Cordoba-Naguit’s December 2011 notations of upper trapezoid tenderness, lumbar paraspinal tenderness, but full range of motion. (R. at 348, 217.)

Second, Plaintiff claims that the ALJ provides no basis for the "broad assertion" that Dr. Lund's limitations as to standing, walking and <u>sitting at one time</u> (or his limitations as to stooping, kneeling, crouching or crawling), were "inconsistent with the record as a whole." (DE 11 at 15, R. at 349.) Although seeming to challenge the ALJ's finding that certain of Dr. Lund's opinions were "inconsistent with the record as a whole," Plaintiff more accurately questions the ALJ's basis "to find that Dr. Lund is correct that Plaintiff can sit 4 hours per day, but disregard his opinion that she can sit only 30 minutes at a time." (DE 14 at 8; DE 11 at 15-16.)

The Undersigned agrees that the ALJ does not explain "why Dr. Lund's opinion that Plaintiff can sit 4 hours in one day is credible, but his opinion that she can only sit 30 minutes at a time is somehow not credible." (DE 11 at 16.) Plaintiff correctly points out that: **(i)** treating rheumatologist Dr. Malani's <u>sitting limitations</u> – the January 2013 opinion that Plaintiff could <u>sit for 15 minutes at one time</u> before needing to get up and <u>less than 2 hours total</u> in an 8-hour working day (R. at 300, 328) – are more significant than Dr. Lund's <u>sitting limitations</u>; and, **(ii)** consultative examiner Dr. Lazzara did not note any <u>sitting restrictions</u> (R. at 745). (DE 11 at 16.) Moreover, the ALJ assigned "little weight" to Dr. Malani's opinion and "great weight" to Dr. Lazzara's opinion to the extent it was consistent with

light work. (R. at 348-349.)[6] Thus, neither of these opinions could have been a reason to discount Dr. Lund's sitting assessments.

The Commissioner correctly notes that Plaintiff does not provide case law requiring the ALJ to explain his agreement or disagreement with Dr. Lund's various exertional assessments. *Kondrashov v. Comm'r of Soc. Sec.*, No. 16-CV-14044, 2018 WL 1146875, at *5 (E.D. Mich. Feb. 12, 2018) (Majzoub, M.J.) (Plaintiff "cites no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion."), *report and recommendation adopted*, No. 16-14044, 2018 WL 1141802 (E.D. Mich. Mar. 2, 2018) (Cox, J.). However, as Plaintiff emphasizes in her reply, she is focused on the inconsistency of the ALJ accepting one of Dr. Lund's sitting limitations but disregarding another. (DE 14 at 8.)

True, "the SSA requires ALJs to give reasons for only treating sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original). *Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject."). Nonetheless, if Lund,

---

[6] In fact, CE Dr. Lazzara noted "no evidence of joint laxity, crepitance, or effusion[,]" a portion of which the ALJ expressly referred to in his review of the medical evidence. (R. at 347, 748.) *See also* July 5, 2015 hospital notes, which indicate, *inter alia*, "no tenderness to palpation, no crepitus noted[.]" (R. at 758.)

Malani and Lazzara each opined that Plaintiff was exertionally limited to sedentary work, it begs the question, "what basis did the ALJ have for disagreeing?" (DE 14 at 7-8.) Where it is unclear, the Court can only assume that the ALJ "succumb[ed] to the temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). *See also Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).

**c. Glen Douglass, M.D. (state agency medical consultant)**

In addition to the three opinions addressed by the parties (Lund, Lazzara and Malani), the Court notes that, on October 28, 2015 – a date *following* ALJ Ashford's initial decision – state agency medical consultant Glen Douglass, M.D., opined that Plaintiff had lifting and carrying limitations that were consistent with work at the light exertional level, although he also assessed Plaintiff's ability to push and/or pull as limited in both lower extremities. (R. at 396-397; 20 C.F.R. §§ 404.1567(b), 416.967(b).)[7] Perhaps for this reason, the disability determination explanation (DDE) notes that, "[b]ased on the seven strength factors of the physical RFC . . .," Plaintiff "demonstrates the maximum sustained work

[7] By comparison, on March 10, 2013, state agency consultant Saadat Abbasi, M.D. assessed lifting and carrying limitations that were consistent with work at the medium exertional level. (R. at 67-68; 20 C.F.R. §§ 404.1567(c), 416.967(c).)

capability" for the *sedentary* level. (R. at 398; 20 C.F.R. §§ 404.1567(a), 416.967(a).)

The ALJ characterized this opinion as "able to perform light work, with occasional operation of foot controls," and mentioned the state agency consultant's postural and environmental limitations. (R. at 350.) Ultimately, the ALJ stated: "The opinions of the state agency medical consultants on subsequent application are more *consistent* with the record as a whole, and are given greater weight." (*Id*. (emphases added).) Thus, it is clear that the ALJ took into consideration several of the 20 C.F.R. §§ 404.1527(c), 416.927(c) factors, such as the examining and treatment relationships (or lack thereof), supportability and consistency, when assigning greater weight to Dr. Douglass's opinion.

However, if the ALJ assigned this opinion "greater weight," then the Court wonders why he did not adopt the DDE's sedentary exertional limitation, nor is it clear that Dr. Douglass's sitting limitations were the ALJ's source of support for the light work sitting limitations, *i.e.*, there is not "an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000); *see also*, SSR 96-7P (S.S.A. July 2, 1996).[8]

[8] In Plaintiff's prior appeal, my colleague reached a similar conclusion as to the ALJ's treatment of Dr. Lund's walking and standing limitations. *See Pope*, 2016 WL 8115399, at *9 ("Without an explanation of *why* the ALJ gave great weight to a physician's opinion, but discarded portions of it in rendering the RFC finding, the courts must simply assume that the ALJ supported his decision with substantial

### 3. Harmful error

Finally, the Commissioner argues that any error in assessing light instead of sedentary work is harmless. (DE 13 at 21-22 n.8.) True, at the March 16, 2017 hearing, the VE testified that adding a sit/stand option would permit work as a production inspector or assembler, and that substituting sedentary work with a sit/stand option would allow for jobs as an order clerk, bench worker or assembler. (R. at 372-374.) However, given the Commissioner's apparent agreement that the ALJ should have applied the borderline age rule, an error in finding the Plaintiff capable of light work rather than sedentary work is not harmless.[9]

### 4. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has shown legal error that may upend the ALJ's decision as to Plaintiff's capability to perform the sitting limitations of light work.

---

evidence. As to why the ALJ discarded Dr. Lund's walking and standing limitations, the reader can only guess. This is not a robust foundation for judicial review.") (emphasis in original).

[9] Plaintiff's appeal is based upon the ALJ's treatment of three opinions. Having found a remandable inconsistency in the ALJ's treatment of Dr. Lund's opinion, the Court need not address the ALJ's treatment of the other two opinions, although on remand, all opinion evidence should be given a fresh look.

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 11), **DENY** Defendant's motion for summary judgment (DE 13), and **REMAND** this matter to the Commissioner of Social Security for proceedings consistent with this report.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 6, 2019

s/*Anthony P. Patti*
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE